IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE ESTATE OF MICHAEL EDDINGS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL CASE NO. 2:20-cv-765-ECM |
| | ) [WO] |
| WEXFORD HEALTH SOURCES, INC., | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION and ORDER**

### I. INTRODUCTION

Now pending before the Court is Defendant Wexford Health Sources, Inc.'s ("Defendant" or "Wexford") motion for summary judgment. (Doc. 28). On September 24, 2020, Plaintiff The Estate of Michael Eddings ("Plaintiff" or "the Estate") filed a complaint against Wexford pursuant to 42 U.S.C. § 1983, alleging that Wexford violated Michael Eddings' constitutional rights.[1] The Estate alleges that while Mr. Eddings was an inmate at Ventress Correctional Facility ("Ventress"), Wexford was deliberately indifferent to his serious medical needs, resulting in his death.

The Defendant's motion for summary judgment is fully briefed and ripe for review. Upon consideration of the briefs, evidence, and applicable law, and for the reasons that follow, the Defendant's motion for summary judgment is due to be GRANTED.

---

[1] The Estate also sued the Alabama Department of Corrections and the Warden of Ventress Correctional Facility, (doc. 1), but those defendants have been dismissed from this action, (doc. 16).

## II. JURISDICTION

The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331. Personal jurisdiction and venue are uncontested.

## III. LEGAL STANDARD

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "[A] court generally must 'view all evidence and make all reasonable inferences in favor of the party opposing summary judgment.'" *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016) (citation omitted). However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018) (citation omitted). If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact. *Hornsby-Culpepper*, 906 F.3d at 1311 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c). The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Hornsby-Culpepper*, 906 F.3d at 1311. The burden then shifts to the non-

moving party "to establish, by going beyond the pleadings, that a genuine issue of material fact exists." *Id.* at 1311–12.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  Non-movants must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant. *Fla. Int'l Univ. Bd. of Trs.*, 830 F.3d at 1252.  Likewise, the reviewing court must draw all justifiable inferences from the evidence in the non-moving party's favor. *Id.*  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).

### IV.  FACTS

The facts, stated in the light most favorable to the non-movant, are as follows:

Since April 1, 2018, Wexford has had a contract with the Alabama Department of Corrections ("ADOC") to provide healthcare services to Alabama state incarcerated inmates.  Hugh Hood, M.D., an Alabama-licensed medical doctor, currently serves as the Regional Medical Director for Wexford.  In this capacity, Dr. Hood oversees the site

Medical Directors and medical providers at the regional correctional facilities across Alabama. At all relevant times, Mr. Eddings was an inmate in the custody of ADOC at Ventress.

Mr. Eddings was seen in Ventress' healthcare unit in the morning of September 20, 2018. He was shaking, crying, and told the medical provider that he was unable to move and his nerves were shot. He was referred to mental health, and later that morning, he was seen by the mental health staff. He reported to a nurse that he woke up shaking and sweating and felt cold. The nurse's progress notes state that Mr. Eddings denied doing drugs. According to the notes, Mr. Eddings was alert, orientated, and talking with his eyes closed.

Mr. Eddings was seen in the healthcare unit again on September 21, 2018. He informed the nurse "I can't walk, pain in my leg," and stated that he had an old gunshot wound in his leg. (Doc. 34-2 at 9). In response to these complaints, a series of X-rays were taken. The X-rays revealed no abnormalities that would explain Mr. Eddings' symptoms.

On September 22, 2018, Mr. Eddings was seen in the healthcare unit due to his altered mental status. Medical records reflect that he would "not talk or respond to questions." (*Id.* at 8). The records further indicate that he had a high blood sugar level. Except for a drug test, no blood tests were ordered at that time. Dr. Hood was notified, and he ordered a blood screen and chemical analysis, which were not conducted until the next day. The lab results were abnormal.

On September 23, 2018, Dr. Hood was notified of Mr. Eddings' abnormal lab results. Dr. Hood ordered that Mr. Eddings be transferred to the Dale Medical Center ER

by ambulance for evaluation. Ultimately Mr. Eddings was transported to Southeast Alabama Medical Center for evaluation. He was diagnosed with bacterial meningitis and severe sepsis caused by the meningitis. He was admitted to the ICU and started on antibiotics for the meningitis. Unfortunately, Mr. Eddings passed away on September 24, 2018.

## V. DISCUSSION

The Estate contends that Wexford was deliberately indifferent to Mr. Eddings' serious medical needs in violation of his Eighth Amendment rights. "To prevail on a deliberate indifference to serious medical need claim, Plaintiffs must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (citation omitted).

Although Wexford is a private entity, it may be held liable under § 1983 because it contracted with the state to provide medical care to inmates, which is a "function traditionally within the exclusive prerogative of the state." *Buckner v. Toro*, 116 F.3d 450, 454 (11th Cir. 1997) (per curiam); *Craig*, 643 F.3d at 1310. Because Wexford is a corporate entity, the *Monell*[2] policy or custom requirement applies. *Craig*, 643 F.3d at 1310. Accordingly, Wexford is liable under § 1983 only if Mr. Eddings' constitutional

---

[2] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). In *Monell*, the Supreme Court explained that municipalities cannot be held liable under § 1983 on a theory of *respondeat superior*. *Id.* at 691. Instead, municipal liability requires the plaintiff to show: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004).

5

rights were violated and Wexford employed a policy or custom of deliberate indifference that led to the violation of his constitutional rights. *See Howell v. Evans*, 922 F.2d 712, 724 n.13 (11th Cir.), *vacated pursuant to settlement*, 931 F.2d 711 (11th Cir. 1991), *and opinion reinstated sub nom. Howell v. Burden*, 12 F.3d 190 (11th Cir. 1994).

"[Corporations] rarely have an official policy that endorses a constitutional violation," *Craig*, 643 F.3d at 1310, and the Estate does not contend that Wexford has such a policy. Thus, the Estate must show that Wexford had a custom of permitting the constitutional violation and that the custom was the "moving force" behind the violation. *Id.* (citation omitted). "A custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). To establish the existence of a custom, the evidence must show more than an isolated incident leading to a constitutional injury: it must reflect a pattern that is widespread. *McDowell*, 392 F.3d at 1290. To show that the practice at issue is sufficiently widespread to constitute a custom, a plaintiff ordinarily must produce evidence that the practice resulted in deficient treatment of other inmates. *See Craig*, 643 F.3d at 1312. Ultimately, the plaintiff must produce sufficient evidence of a "series of constitutional violations from which deliberate indifference can be inferred." *Id.* (citation omitted).

In *Craig*, the Eleventh Circuit addressed a detainee's claim that a private entity had a policy, custom, or practice of providing constitutionally inadequate medical care. *Id.* at

1312.³  The plaintiff alleged that, during his nine-day detention, he was evaluated sixteen times by nine employees but was only treated with medication and was not referred for surgery until the end of the nine-day period. *Id.* at 1308–09.  The plaintiff argued he had established that the defendant, a private medical provider, had a policy, custom, or practice because the actions of the employees, taken together, established a practice of not referring detainees to physicians, relying on hospital clearance forms instead of independent evaluations, and using the least costly means to treat detainees. *Id.* at 1311.

The Eleventh Circuit affirmed the district court's grant of summary judgment in favor of the defendant. *Id.* at 1312.  The court explained that because the plaintiff did not point to any occasion where the alleged policy or custom exacerbated another inmate's medical condition and instead relied only on evidence of his own treatment, the plaintiff's proof amounted to proof of a single incident, which was insufficient to impose § 1983 liability. *Id.* at 1311.  The court rejected the argument that a custom, policy, or practice could be established by relying on evidence of the plaintiff's experience alone. *Id.* at 1311–12.  Specifically, regarding the alleged policy of treating the plaintiff by the least costly means, the court explained that although several of the defendant's employees treated the plaintiff over the course of nine days, those treatments were "insufficient to prove that [the defendant] had a policy or custom of constitutional violations against detainees that was 'persistent' or 'so widespread as to have the force of law.'" *Id.* (citations omitted).

---

³ Because the plaintiff in *Craig* was a pretrial detainee and not a convicted prisoner, his claims were evaluated under the Fourteenth Amendment. *Id.* at 1310.  However, inadequate medical care claims under the Fourteenth Amendment are analyzed under the same standard as claims under the Eighth Amendment. *Id.*  Therefore, the Court finds *Craig* instructive.

The Estate argues that Wexford was deliberately indifferent to Mr. Eddings' serious medical needs because Wexford delayed his care by several days, including by failing to conduct a blood test when Mr. Eddings first presented symptoms. The Estate contends that as a result of the delay, Mr. Eddings' infection worsened to the point that he developed sepsis and antibiotics were inadequate to treat him. The Estate further contends that other individuals received inadequate medical care from Wexford.

Assuming without deciding that Mr. Eddings' constitutional rights were violated, the Estate nonetheless has not established a genuine dispute of material fact regarding Wexford's implementation of a policy or custom evidencing deliberate indifference to inmates' serious medical needs. The Estate agrees that this is the applicable legal standard. However, the Estate has presented no evidence of a policy or custom implemented by Wexford to delay or deny necessary medical care, nor has the Estate presented evidence of a permanent, widespread practice to delay or deny necessary medical care to inmates. The Estate contends that Mr. Eddings "is far from the only individual to obtain insufficient medical care" from Wexford while in ADOC's custody. (Doc. 34 at 4). However, the Estate cites no evidence in support of this statement, and the Court discerns nothing in the evidentiary record to support it. Indeed, the Estate presents no evidence regarding Wexford's provision of medical care to other inmates and relies only on evidence of Mr. Eddings' treatment. This amounts to evidence of a single incident of allegedly unconstitutional conduct, which is insufficient to impose liability on Wexford under § 1983. *See Craig*, 643 F.3d at 1311–12. Thus, the Estate has failed to meet its burden of demonstrating the existence of a genuine dispute of material fact as to a policy or custom

of deliberate indifference to inmates' serious medical needs. Accordingly, Wexford's motion for summary judgment is due to be granted.

## VI. CONCLUSION

For the reasons stated, it is hereby ORDERED that the Defendant's motion for summary judgment (doc. 28) is GRANTED.

A separate Final Judgment will enter.

DONE this 15th day of February, 2022.

                                /s/Emily C. Marks
                                EMILY C. MARKS
                                CHIEF UNITED STATES DISTRICT JUDGE